UNITED STATES of America
v.
Carmelo MANCUSO.

Cr. A. 14685.

United States District Court
W. D. Louisiana
Shreveport Division.

May 13, 1957.

T. Fitzhugh Wilson, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the United States.

James M. Barton, Shreveport, La., for defendant.

BENJAMIN C. DAWKINS, Jr., Chief Judge.

### History of the Case

1

Defendant was taken into custody in the Shreveport Division of this District on June 14, 1956, under United States Commissioner's Complaint and warrant issued in the Eastern District of this State on that date, charging a violation of 18 U.S.C. § 1001. He promptly was taken before United States Commissioner Alfred W. Bullock, who fixed temporary bond in the sum of $5,000. On June 20, 1956, defendant again was taken before Commissioner Bullock. He then formally waived preliminary hearing, and permanent bond was set in the sum of $2,000.

2

Defendant having requested that the case be handled in this District under the provisions of Rules 7(b) and 20, Federal Rules of Criminal Procedure, 18 U.S.C.A., and both United States Attorneys agreeing, the case was transferred from the Eastern District of Louisiana to this District in compliance with his request. On June 26, 1956, defendant was brought into Court at which time the contemplated waiver of indictment, and his right to be represented by counsel, were fully explained to him. He in-

formed the Court that he did not desire the assistance of counsel, following which he formally waived indictment. On July 13, 1956, defendant again was brought into Court for arraignment, then entering a plea of guilty to a bill of information filed by the United States Attorney, containing one count and charging a violation of 18 U.S.C. § 1001. Sentence was deferred until a pre-sentence investigation report could be made by the Probation Officer. Later, after the F.B.I. fingerprint return had been received and shown to the Court, wherein defendant's extensive criminal record was disclosed, and it was learned that he had spent most of his adult life travelling around the world, it was determined that a pre-sentence report would not be practical, and it was directed that no further efforts to prepare one be made. On July 24, 1956, defendant was brought into Court for the third time, and, after having been afforded an opportunity to make a statement in mitigation, sentence was imposed. Because it was felt that his fraudulent tendencies constituted a genuine menace to society, on the single count of the bill of information defendant was given the maximum sentence of five years imprisonment.

3

On December 22, 1956, while incarcerated in the United States Penitentiary, Leavenworth, Kansas, defendant, proceeding *in forma pauperis* and without counsel, filed a "Motion to Vacate, Set Aside Correct Judgment and Sentence and Grant a Sanity Hearing", attempting to bring his case under 18 U.S.C. § 4245, and contending that he was insane at the time of the commission of the alleged offense; that he was insane when he waived indictment, when he was arraigned and when sentenced; hence that the sentence was imposed in violation of the Constitution and laws of the United States. Feeling that a factual, rather than a purely legal, question thus was presented, we decided he was entitled to a hearing on his motion. Being without counsel of his own choice

and being unable to employ an attorney, the Court appointed James M. Barton, Esq., Attorney at Law, Shreveport, Louisiana, an able and experienced practitioner, to represent movant in the matter. He was returned to this District for trial of the motion, which was held on March 25, 1957.

4

On trial of the motion, evidence, both oral and documentary, by movant and the Government, was submitted. Movant testified that he was insane at the time of the alleged offense; that he has no recollection of ever having waived indictment or of having been arraigned and sentenced. On cross-examination, he emphatically denied that he ever had been addicted to the use of narcotics. Movant offered and filed in evidence the following documentary evidence, identified as "M-1", "M-2", and "M-3": 1) photostatic copy of report from the New Jersey State Hospital at Ancora, Hammonton, New Jersey, dated October 10, 1955; 2) letter from County of Los Angeles General Hospital, dated January 23, 1957; and 3) letter from Harry H. Brunt, Jr., M. D., Medical Director of the New Jersey State Hospital at Ancora, dated November 28, 1956. The Government offered and filed in evidence letter from Russell O. Settle, M. D., Medical Director, P. H. S., Chief Medical Officer, United States Penitentiary, Leavenworth, Kansas, dated February 14, 1957, identified as "G-1". The evidence was left open to enable both counsel for movant and for the Government to obtain additional pertinent documentary evidence for immediate filing. Specifically, Government counsel was requested to obtain clinical reports from the United States Public Health Service Hospital, New Orleans, Louisiana, and from the Hospital at Barksdale Air Force Base, Louisiana, movant's counsel to obtain similar report from the General Hospital, County of Los Angeles, Los Angeles, California, movant having been admitted to those hospitals on the dates shown hereinafter.

A second and further hearing was had on April 24, 1957, movant again being present in Court and represented by his Court-appointed counsel. Movant offered and filed in evidence, identified as "M–4", letter from James M. Barton to County of Los Angeles General Hospital, dated March 26, 1957, with reply thereto dated April 5, 1957, signed by Zora Hanson, Chief Hospital Registrar. The Government offered and filed in evidence clinical records identified as "G–2" and "G–3" from the United States Public Health Service Hospital, New Orleans, Louisiana, and from the Hospital at Barksdale Air Force Base, Louisiana. The evidence was then closed, argument by both counsel for movant and counsel for the Government having been waived.

### Findings of Fact

After careful analysis and evaluation of the evidence, oral and documentary, the Court hereby makes the following findings of fact, specific reference being made to all documentary evidence submitted, as identified:

1

Exhibit "M–1"

The basis of movant's commitment to the New Jersey State Hospital at Ancora, Hammonton, New Jersey, during the period beginning August 18 and ending September 20, 1955, is clearly summarized by Dr. Harry H. Brunt, Jr., Medical Director of the Hospital, in his letter to the United States Attorney of this District, dated January 25, 1957, from which we quote below in part:

"* * * *At no time throughout his hospitalization was he considered psychotic, insane, mentally incompetent or not responsible for his actions and behavior.* A review of his history would indicate that he is somewhat of a considerable pathological liar. * * *

"Enclosed you will find a copy of his Final Order of Commitment, also a copy of a transcript from a previous hospitalization at Camden County Hospital for Mental Diseases, an Abstract of his hospitalization here, and copies of the Progress Notes on his case. You will note that nowhere has he been referred to as psychotic or insane except in his Order of Commitment *in which psychiatric opinion did not occur.*" (Emphasis supplied.)

2

Exhibit "M–2"

By letter dated January 23, 1957, addressed to movant, P. O. Box 1200, Leavenworth, Kansas, Zora Hanson, Chief Hospital Registrar, advised movant that he had been treated at the County of Los Angeles General Hospital, Los Angeles, California, in April, 1954, for gallstones and grand mal epilepsy. The letter further advised that the Hospital had no record of a "heart attack".

3

Exhibit "M–3"

By certificate dated November 28, 1956, addressed "To Whom It May Concern", over the signature of Harry M. Brunt, Jr., M. D., Medical Director of the New Jersey State Hospital at Ancora, Hammonton, New Jersey, it is stated that movant was admitted to that Hospital on August 18, 1955, as a Regular Commitment, having been brought from the Camden County Jail. It is further stated that movant was found to be not psychotic. He was permitted ground privileges, but left the jurisdiction of the Hospital on unauthorized leave on September 20, 1955. A diagnosis of Sociopathic Personality Disturbance, Anti-Social Reaction was made.

4

Exhibit "M–4"

Letter dated April 5, 1957, addressed to James M. Barton, Attorney at Law, 801 Johnson Building, Shreveport, Louisiana, from Zora Hanson, Chief Hospital Registrar, County of Los Angeles General Hospital, Los Angeles, California, sets forth treatment administered to movant in that Hospital beginning March 16 and ending March 22,

1950. The following diagnosis was made: "Psychopathic personality. Chronic cholecystitis. Grand mal epilepsy." There is strong indication of belief that his "epileptic" seizures were feigned.

5

Exhibit "G–1"

Letter dated February 14, 1957, addressed to the Court by Russell O. Settle, M. D., Medical Director, P. H. S., Chief Medical Officer of the United States Penitentiary, Leavenworth, Kansas, is quoted below in its entirety:

"The following psychiatric opinion is respectfully submitted at the request of the United States Attorney, Western District of Louisiana. It is based on seven months of observation of the above named prisoner's behavior and adjustment during confinement at the United States Penitentiary at Leavenworth, Kansas; on a psychiatric examination dated August 16, 1956, a psychological report dated September 7, 1956, the findings during two weeks hospitalization from August 1, 1956, to August 16, 1956, and on numerous subsequent interviews by the undersigned and other members of the medical staff.

"*It is my opinion, and the opinion of the other members of the medical staff at Leavenworth, that during confinement Carmelo Mancuso has not been legally insane or mentally irresponsible.* He is afflicted with a personality pattern disturbance; a paranoid personality manifested by history of pathological lying, repetitive criminality, and malingering; impaired insight, judgment and reasoning; and emotional instability and hysterical behavior traits. *In our judgment, he is, and has been during this period, in possession of his mental faculties to the extent of being able to distinguish right from wrong and cooperate with counsel.*" (Emphasis supplied.)

6

Exhibit "G–2"

The clinical record of the United States Public Health Service Hospital, New Orleans, Louisiana, dated April 23, 1956, with respect to "Psychiatric Impression", states: "I would seriously question the diagnosis of hysteria in this man. It is possible that he is unconsciously over-reacting to a physical defect, but do not think frank hysteria is likely. The possibilities to be considered are: 1. The over-reaction to mild physical insult. 2. Malingering. Is a drug addict. The discrepancies in the patient's story make the second appear most likely."

7

Exhibit "G–3"

The clinical record from the Hospital at Barksdale Air Force Base, Louisiana, dated June 5, 1956, states that when movant entered the Hospital he pretended to be a Lt. Commander in the United States Coast Guard, stationed at the United States Naval Station, Norfolk, Virginia. This report further shows that later investigation revealed his credentials to be false and that he had a marked ability to "fake" heart attacks as a "gimmick" to obtain drugs. The report also shows that when a decision was reached to discontinue administration of drugs (presumably narcotics) movant immediately demanded that he be released from the Hospital. Movant then actually signed a release, and upon leaving the Hospital was taken into custody by F.B.I. agents.

8

As shown by the transcripts of the various hearings, in the record, the Court had ample opportunity to observe and evaluate movant's actions, speech and general demeanor during his several appearances in Court. Particularly was this so on June 26, 1956, when he appeared and formally waived indictment; on July 13, 1956, when he was arraigned; on July 24, 1956, when he was sentenced; on March 25, 1957, and on April

24, 1957, when the present motion was heard. We also carefully observed movant's demeanor, speech and conduct while he was on the witness stand. At all times when he was before the Court, his reactions to questions by the Court, by his own counsel and by Government counsel on cross-examination, clearly showed that his memory of events was not faulty, that he was not insane or psychotic in any degree on any of the relevant occasions, and that he is, indeed, nothing more or less than a pathological liar.

## Applicable Law

 In the light of the very recent case entitled "Gregori v. United States of America," 5 Cir., 243 F.2d 48, there can be no doubt that the motion now before the Court falls squarely within the provisions of 28 U.S.C. § 2255, and not within the terms of 18 U.S.C. § 4245. The appellate Court, in its decision in Gregori relied heavily upon Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835. These cases involve factual situations strikingly analogous to the case at bar, and are most apposite.

Here the Director of the Bureau of Prisons did not certify that movant had been examined by the board of examiners referred to in 18 U.S.C. § 4241. Hence the provisions of 18 U.S.C. § 4245 properly may not be invoked by movant. However, he clearly was entitled to seek relief under the provisions of 28 U.S.C. § 2255, and the matter is treated as if such an application had been made.

## Conclusions of Law

### 1

 It is our considered opinion that the evidence submitted shows conclusively that movant 1) was sane when he committed the offense charged; 2) that he was sane on June 26, 1956, when he executed and signed a formal waiver of indictment; 3) that he was sane on July 13, 1956, when he was formally arraigned; 4) that he was sane on July 24, 1956, when he was sentenced; and 5) that he presently is of sound mind.

### 2

At no time from March, 1950, when movant first was treated at the County of Los Angeles General Hospital, Los Angeles, California, to the present has it been shown that he ever had been formally committed to a hospital, or other institution, because of insanity. The "commitment" to the New Jersey State Hospital at Ancora, Hammonton, New Jersey, upon which he principally relies, should be disregarded entirely, because, according to Dr. Harry H. Brunt, Jr., Medical Director of that Hospital, when the "Order of Commitment" was executed, psychiatric opinion did not occur.

### 3

 The evidence further shows conclusively that, during the period he was in that Hospital, movant resorted to repeated malingering, obviously for the purpose of obtaining narcotics. He is a pathological liar, and his unsupported testimony is unworthy of belief. Accordingly, it must be disregarded.

## Ruling

The motion, therefore, is denied; and the United States Marshal for this District is ordered hereby to return movant to the United States Penitentiary, Leavenworth, Kansas, forthwith.